**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MURIELITA NIEVES, | |
| Plaintiff, | CIVIL NO. 19-1346 (GLS) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## OPINION AND ORDER

Murielita Nieves seeks judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"). Docket No. 3. On April 6, 2020, Plaintiff filed a motion requesting the Court to reverse the Commissioner's final decision denying disability benefits because the decision was not based on substantial evidence, as required by 42 U.S.C. § 405(g). Docket No. 22. The Commissioner submitted a motion in opposition to Plaintiff's request (Docket No. 23), and both parties had the opportunity to present their arguments before the Court during a hearing held on March 8, 2021 Docket No. 34.

The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket Nos. 5 and 7. After careful review of the administrative record, the briefs on file and the arguments raised by the parties during the hearing, the case is **REMANDED** for further administrative proceedings consistent with the Court's opinion.

## I.   PROCEDURAL BACKGROUND

Plaintiff, who worked as a packager in the manufacturing industry, filed an application for disability insurance benefits on November 12, 2013, and claims that her disability began on June

15, 2012 (Tr[1]. 405-408). Plaintiff's application was denied on March 20, 2014 and, upon reconsideration, on August 8, 2014 (Tr. 254, 276). As a result, on October 17, 2014 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 293-294). The hearing was held on February 16, 2017 before ALJ Livia Morales and Plaintiff, represented by counsel, was able to present her testimony (Tr. 90-113). A second hearing was held on August 24, 2017. In this hearing, the ALJ heard the testimony of both Plaintiff and Vocational Expert, Dr. Marieva Puig (Tr. 77-89).

On November 16, 2017, the ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of June 15, 2012 through December 31, 2015, the last date insured (Tr. 52-76). On December 13, 2017, Plaintiff asked the Appeals Council to review the final decision issued by the ALJ (Tr. 402-404). The Appeals Council denied this request on February 15, 2019 (Tr. 1-8), making the Commissioner's decision the final decision for review by this Court.

## II.   LEGAL FRAMEWORK

### A.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court is empowered to affirm, modify, reverse or remand the decision of the Commissioner, based upon the pleadings and transcript of the record. 42 U.S.C. § 405(g). In reviewing a Social Security decision, the Court's function is limited to deciding whether the ALJ's decision is supported by substantial evidence from the record and based on a correct legal standard. See Id; Seavey v. Barnhart, 276 F. 3d 1 (1st Cir. 2001); Manso-Pizarro v. Secretary of Health & Human Services, 76 F. 3d 15, 16 (1st Cir. 1996); Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence, but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. See Nguyen v. Chater, 172 F. 3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. See Purdy v. Berryhill, 887 F. 3d 7, 13 (1st Cir. 2018).  As recently explained by the United States Supreme, under the substantial evidence standard, "a court looks to an existing administrative record and

---

[1] "Tr." refers to the transcript of the record of proceedings.

asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". <u>Biestek v. Berryhill</u>, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

If the Court finds that the Commissioner's decision is supported by substantial evidence, it must be upheld, even if there is also substantial evidence in support of Plaintiff's position. 20 C.F.R. § 404.1546(c). The Commissioner's findings must be upheld by the court if a reasonable mind, reviewing the evidence in the record, could accept them as adequate to support his conclusion. <u>See</u> <u>Rodríguez v. Secretary of Health and Human Services</u>, 647 F. 2d 218, 222 (1st Cir. 1981).  If the ALJ's decision is supported by substantial evidence, it must be upheld, even if the record could arguably justify a different conclusion. <u>See</u> <u>Rodríguez Pagán v. Secretary of Health and Human Services</u>, 819 F. 2d 1, 3 (1st Cir. 1987).  Therefore, reversal of an ALJ's decision by a Court is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate...to justify the conclusion" of the ALJ. <u>Manso–Pizarro</u>, 76 F.3d at 16.

In reaching the final decision, it is the Commissioner's responsibility to determine issues of credibility and to draw inferences from the evidence in the record. <u>See</u> <u>Purdy v. Berryhill</u>, 887 F. 3d 7 (1st Cir. 2018). To this end, courts will not second guess the Commissioner's resolution of conflicting evidence. <u>See</u> <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F. 2d 765, 769 (1st Cir. 1991).  In sum, this court's role is to determine "whether the final decision is supported by substantial evidence and whether the correct legal standard was used."  <u>Seavey v. Barnhart</u>, 276 F.3d at 9.

**B.  DISABILITY DETERMINATION BY THE SSA: FIVE STEP PROCESS**

Plaintiff generally has the burden of proving that he has become disabled within the meaning of the Social Security Act. <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987); <u>Rivera–Tufiño v. Commissioner of Social Security</u>, 731 F.Supp.2d 210, 212–13 (D.P.R.2010).  The ultimate question is whether Plaintiff is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 423. The severity of the impairment must be such that the claimant "is not only unable

to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." Deblois v. Secretary of Health and Human Services, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, a five-step sequential evaluation must be applied. 20 C.F.R. § 404.1520; Bowen, 482 U.S. at 140-142; Goodermote v. Secretary of Health and Human Services, 690 F.2d 5, 6–7 (1st Cir.1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). If not engaged in substantial gainful activity, the decision-maker moves to the second step, where he must determine whether the claimant has a medically severe impairment or combination of impairment that significantly limits claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the impairment or combination of impairments is severe, the third step applies. At this point, the ALJ must determine whether the claimant's severe impairments meet the requirements of a "Listed Impairment", which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. See 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1.  If the claimant has a listed impairment, or an impairment equivalent in severity to a listed impairment, the claimant is considered disabled.

 If the claimant's impairment does not meet a listed impairment, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1520(e) and 404.15245(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment because of the alleged disability. See Santiago v. Secretary of Health & Human Services, 944 F. 2d 1, 5 (1st Cir. 1991). The Commissioner has the burden under step five to prove the existence of other jobs in the national economy that claimant can perform, in view of claimant's RFC, age, education and work experience. See Ortiz v. Secretary of Health & Human Services, 890 F. 2d 520, 524 (1st Cir. 1989); 20 C.F.R. § 404.1520(g). If there are none, then the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

To be eligible for disability benefits, the claimant must demonstrate that his disability existed prior to the expiration of his insured status, or his date last insured. See Cruz Rivera v. Secretary of Health & Human Services, 818 F. 2d 96, 97 (1st Cir. 1986).

## III.    DISCUSSION

Plaintiff argues, in essence, that the ALJ erred in the weight given to the medical evidence presented regarding her mental condition and, as a result, the ALJ's mental RFC determination is unsupported by substantial evidence. Specifically, Plaintiff claims that the ALJ erred by giving "great weight" to the opinion of State Agency Consultants ("SAC") who did not examine Plaintiff nor evaluate the complete evidence in the file, and applied mental impairment evaluation criteria that are no longer applicable. Since Plaintiff's claim was filed before March 27, 2017[2], she claims that the ALJ had to give controlling weight to the treating physician's opinion on the issue of the nature and severity of the impairment.

Furthermore, Plaintiff claims that, even if the ALJ was correct in not giving controlling weight to the treating physician, the decision to confer greater weight to the SAC was not based on the factors listed in 20 C.F.R. § 404.1527(c)(1)-(6); to wit, length of treatment and frequency of examination, nature and extent of treatment relationship, evidence in support of medical opinion, consistency of the medical opinion with the record, the medical source's specialty, and other factors which tend to support or contradict the opinion.

Plaintiff does not object to the exertional portion of the RFC but focuses her request for remand solely on the ALJ's determination regarding Plaintiff's non-exertional RFC. Thus, the Court's analysis will be limited to the ALJ's finding regarding the mental RFC.

### A.  THE ALJ DECISION

Applying the five-step sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability through her last date insured (Tr. 60) and proceeded to step two of the analysis. At the second step, the ALJ found that the claimant had the following severe impairments: sacroiliitis, obstructive sleep apnea, obesity, carpal tunnel

---

[2] The Commissioner revised the relevant regulations effective March 27, 2012. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Since Plaintiff's claim was filed on a previous date, the older regulations apply. 20 C.F.R. § 404.1527.

syndrome, and depression (Tr. 60). The ALJ deemed, at the third step, that these impairments or combination of impairments did not meet or medically equal the severity of a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 61-62). The ALJ concluded that the "paragraph B" criteria were not met because Plaintiff's mental impairment did not result in at least one extreme or two marked limitations in a broad area of functioning. Having concluded step three of the analysis, the ALJ proceeded to determine Plaintiff's RFC (Tr. 63).

At the fourth step, the ALJ concluded that claimant was unable to perform any of her past relevant work (Tr. 68), and neither party disputes this conclusion. The ALJ ended the sequential inquiry at step five when she concluded, after adopting the Vocational Expert's testimony, that through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and residual function capacity. Specifically, the ALJ concluded that Plaintiff could perform the following work, classified as unskilled and sedentary: envelope addresser, weight tester or ampoule sealer (Tr. 69). The ALJ concluded that the Vocation Expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. Consequently, the ALJ determined that Plaintiff was not disabled from the onset date through the date last insured (Tr. 70).

## B.  PLAINTIFF'S MENTAL RFC

The ALJ determined that, mentally, claimant's RFC was limited to performing simple, routine tasks; was limited to simple work-related decisions; could frequently respond appropriately to supervisors; could occasionally respond appropriately to co-workers; could never respond appropriately to the public; could tolerate few changes in a routine work setting, defined as one limited to simple work-related decisions and occasional changes in routine (Tr. 63). The ALJ noted that Plaintiff described symptoms, such as depressed moods, poor concentration, irritability, difficulties completing tasks and following instructions, diminished activities of daily living, including significant reliance on others for meal preparation and performance of household chores. (Tr. 63-64 ref. to 144-152; 164-171; 581-586; 589-597).

In assessing the claimant's mental RFC, the ALJ determined that an underlying medically determinable impairment could reasonably be expected to produce Plaintiff's symptoms. However, upon consideration of the Plaintiff's own statements regarding the intensity, persistence

and limiting effects of her symptoms, the ALJ concluded they were not entirely consistent with the evidence in record (Tr. 64). The ALJ understood that Plaintiff was limited to simple work activities with a reduced degree of social interaction and workplace changes. And that these limitations were accommodated by the RFC to the extent established by the objective evidence, which did not support Plaintiff's "profound degree of reduced functioning" (Tr. 64). The following medical records and opinions were evaluated by the ALJ in her determination regarding Plaintiff's mental RFC.

### 1.  Dr. Ángel E. Loyola Pérez, Treating Physician – Psychiatrist.

The ALJ noted Plaintiff had chronic issues with mood disturbance. However, she deemed that the record also reflected moderate findings and adequate symptoms control with conservative treatment (Tr. 64). To reach this conclusion, the ALJ evaluated the progress notes from Dr. Ángel E. Loyola Pérez ("Dr. Loyola") dated from March 2014 until January 2017.[3] The ALJ made specific reference to a progress note from a mental exam conducted in May 22, 2014, which revealed that Plaintiff was depressed, crying, forgetful, isolated, felt anhedonia, irritable, had low tolerance, difficulty sleeping, nervousness, poor self-esteem, hopelessness, poor concentration and appeared disheveled (Tr. 600; 180). The ALJ specifically noted that Plaintiff had no indications of hallucinations or suicidal ideations, and that mental status examinations through the date last insured revealed substantially similar findings (Tr. 66 ref. to 725-740).

The ALJ also evaluated Dr. Loyola's report from July 2014 which indicated that Plaintiff had significant limitations in areas such as daily living, social functioning, stress tolerance and task persistence (Tr. 616-621, trans. 191-196). The ALJ considered that Dr. Loyola's opinion was "somewhat vague" because it lacked specificity as to the degree of the functional limitations and understood that it suggested a degree of restriction higher than established by the overall record, which the ALJ deemed shows adequate functioning overall. Nonetheless, the ALJ gave Dr. Loyola's opinion ***partial weight*** as it suggested meaningful mental limitations (Tr. 67-68).

---

[3] The progress notes referenced by the ALJ range from March 2014 to August 2014; November 2014 to December 2014; January 2015 to July 2015; September to December 2015; January 2016 to September 2016; November 2016 to January 2017 (Tr. 600-602; trans. 180-182)(Tr. 714-740; trans. 209-235). Notably, the ALJ considered medical evidence outside Plaintiff's last insured date, December 31, 2015.

## 2.  Dr. Yarelis Pérez Rivera[4], Consultative Examiner- Internist.

The ALJ briefly addressed the opinion rendered by Dr. Yarelis Pérez Rivera, a consultative examiner who evaluated Plaintiff for an internal medical evaluation (Tr. 66 ref. to 583-586).  Dr. Pérez's examination revealed antalgic gait and depressed mood, and opined that Plaintiff had moderate to severe limits to perform everyday chores due to morbid obesity complications, such as sleep apnea and depression (Tr. 586). The ALJ thought that Dr. Pérez' opinion was vague but gave it *partial weight* inasmuch as it was consistent with the overall record and the RFC (Tr. 66).

## 3.  State Agency Psychological Consultants.

The reports rendered by SAC, Dr. Russell Phillips and Dr. Luis Rodríguez, were given great weight by the ALJ. The SAC reviewed Dr. Loyola's report **and part of his progress notes**, as well as the reports from consultative examiners Dr. Constance Chaim and Dr. Yarelis Pérez, among other records. The report rendered by Dr. Phillips is from March 2014 and, at the reconsideration level, Dr. Rodríguez issued the report on August 2014. Therefore, the last of Dr. Loyola's progress notes evaluated by the SAC is from July 2014. Notably, **Plaintiff's last insured date was December 31, 2015— one year and four months after the SAC's opinion upon reconsideration was rendered— and Plaintiff received continuous psychiatric treatment until the last insured date.**

The SAC concluded that Plaintiff had mild restrictions in activities of daily living, moderate difficulty maintaining social functioning, moderate difficulty maintaining concentration, persistence and pace, and no repeated episodes of decompensation, with corresponding limitations in specific work-related mental activities (Tr. 245; 267). The ALJ acknowledged in its decision that the SAC are non-examining sources whose opinions were rendered without the benefit of the evidence received at the hearing level and, in this case, applied mental impairment criteria that was no longer applicable. Notwithstanding the foregoing, the ALJ gave these opinions *great weight* when determining Plaintiff's mental RFC because the SAC had access to a "meaningful part of the record", had knowledge of the SSA's standards and procedures, their opinions were reasonably

---

[4] Incorrectly identified in the ALJ decision as Murielita Nieves Colón, MD (Tr. 66).

explained, and were consistent with the overall record suggesting a moderate degree of mental restriction. (Tr. 67-68).

### 4. Dr. Constance J. Chaim, Consultative Examiner.

The ALJ also took into consideration the report rendered by consultative examiner Dr. Constance J. Chaim Muñíz ("Dr. Chaim"), a psychiatrist who evaluated Plaintiff once in January 2014. As noted by the ALJ, Dr. Chaim informed in this report that Plaintiff had to rely on others to perform household chores, handle money, manage her medication, and had minimal interaction with people outside her family. Moreover, Dr. Chaim found that Plaintiff had inadequate immediate and short-term memory, inadequate attention span and concentration, and poor social judgment. Further, Dr. Chaim concluded that Plaintiff seemed to have difficulty adapting to new circumstances, handling stressors and pressure, had poor social interaction, needed assistance to perform most her daily living tasks, and had to be supervised when taking her medications. The ALJ noted that Dr. Chaim also found that Plaintiff had a euthymic mood, no evidence of disorganized thought process, normal psychomotor activity, and normal recent and long-term memory (Tr. 67 ref. to 590-596).

The ALJ deemed that, as a one-time examiner, Dr. Chaim's "inadequate" findings were vague— suggesting a higher degree of restriction than supported by the substantial evidence on record and based partially on Plaintiff's subjective report regarding her functioning. In sum, the ALJ awarded *some weight* to the findings of Dr. Chaim since they pointed to a meaningful mental restriction, which was somewhat consistent with the overall record (Tr. 67).

### C. ANALYSIS OF ALJ DECISION AND PLAINTIFF'S ALLEGATIONS OF ERROR

Plaintiff correctly sustains that since her disability claim was filed prior to March 27, 2017 (the effective date of the new Social Security Regulations), the ALJ had to apply the "treating physician rule". The "treating source rule" provides that ALJ should give more weight to opinions of treating physicians in social security disability cases because these sources are likely to be the medical professionals most able to provide detailed, longitudinal picture of claimant's medical impairments and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examination. See Bourinot v. Colvin, 95 F. Supp. 3d 161 (D. Mass. 2015), citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Essentially, the rule provides that, absent contrary authority, the opinion of a treating physician should be given controlling weight regarding the nature and severity of the impairment. See Purdy v. Berryhill, 887 F.3d 7 (1st Cir. 2018). Where controlling weight is not given to the treating source opinion, the ALJ considers an array of factors to determine what weight to grant an opinion and must explain the weight given to the treating source opinion and the reasons supporting that decision. See Bourinot v. Colvin, 95 F. Supp. 3d at 161; 20 C.F.R. §§ 404.1527(c). However, the ALJ is not required to expressly state how each factor was considered, only that the decision provides good reason for the weight given to the treating source opinion. Id., citing 20 C.F.R. § 404.1527(c)(2), 416.927(c)(2).

In the case at hand, for the treating physician rule to apply, there must have been an absence of medical authority contrary to Dr. Loyola's findings. 20 C.F.R. § 405.1527.  While Dr. Loyola's opinion seems fairly aligned with Dr. Chaim's opinion, there is certainly an inconsistency with the SAC opinions regarding the nature and severity of Plaintiff's mental impairment. Thus, an argument could be made that the ALJ was not obliged to give controlling weight to Dr. Loyola's opinion. However, the ALJ did have to apply the factors established in 404.1527(c)(2)(i) and (c)(2)(ii) as well as the factors in paragraphs (c)(3) to (c)(6) of 20 C.F.R. § 405.1527 in determining the weight to be given to medical opinions. An ALJ need not expressly address each factor identified by the regulations but must provide "good reasons" for the weight assigned to the opinion of a treating source. Olmeda v. Astrue, 16 F. Supp. 3d 23, 31 (D.P.R. 2014); see also 20 C.F.R. § 404.1527(d).

The Court notes that the ALJ did express having taken into account some of these factors, such as length of treatment (i.e., that Dr. Loyola had a longitudinal record, that Dr. Chaim was a one-time examiner, and that the SAC did not examine Plaintiff); consistency (i.e., that Dr. Loyola found Plaintiff in the same mental state since March 2014 until the last insured date), and other factors (i.e., the expertise of SAC in the Security Administration's standards and procedures). Even if the Court were to conclude that the ALJ did not have to provide controlling weight to Dr. Loyola's opinion because these other factors were considered by the ALJ, the ALJ had to provide "good reasons" for the weight assigned to the opinion of Dr. Loyola. The reasons proffered by the ALJ were that Dr. Loyola's opinion was "somewhat vague", lacked specificity as to the degree of Plaintiff's functional limitations, and suggest a higher degree of restriction than established by

medical records. Nonetheless, the ALJ does not articulate record-based reasons for not giving controlling weight to the opinion of the psychiatrist, who was Plaintiff's longest-treating, most frequently seen, and most substantive service provider.  See e.g. Newbold v. Colvin, 718 F.3d 1257 (10th Cir. 2013).

Further, departing from the treating physician rule, the ALJ determined to give the **_most weight_** to the opinions of SAC, who based their opinions **on a significantly incomplete medical record**. As argued by Plaintiff, three factors purportedly undermine the opinion of the SAC, that they: (1) did not examine Plaintiff; (2) applied mental impairment evaluation criteria that are no longer applicable, and (3) did not evaluate the complete evidence in the file. These arguments are discussed in order below.

With regards to the fact that the SAC did not examine Plaintiff, the Court notes that, generally, it is appropriate for an ALJ to rely on the reports of the consultative and non-examining physicians in assessing appellant's RFC. See Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 144 (1st Cir.1987) (ALJ may piece together relevant medical facts from the findings and opinions of multiple physicians). And, further, that state agency consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. See 20 C.F.R. § 404.1527(e)(2)(i). Based on foregoing, the ALJ's reliance on non-examining experts is technically correct. However, this District Court has found that the "written report submitted by a non-examining, non-testifying physician necessarily limits the probative power of the report." Vega-Valentín v. Astrue, 725 F. Supp.2d 264, 271 (D.P.R. 2010) (citing Rodríguez v. Secretary of Health & Human Services, 647 F.2d 218, 224 (1st Cir.1981)).  And even though such reports are entitled to some evidentiary weight, the weight afforded "will vary with the circumstances, including the nature of the illness and the information provided the expert." Vega-Valentín v. Astrue, 725 F. Supp.2d at 271 (citing Berrios Lopez v. Sec'y of Health & Hum. Servs., 951 F.2d 427, 431 (1st Cir. 1991) and Rodríguez, 647 F.2d at 223).

Regarding the fact that the SAC purportedly applied "incorrect criteria", the Court notes that the "Paragraph B" criteria applied by the SAC was the criteria applicable in 2014. The "Paragraph B" criteria were changed effective January 17, 2017. Since the new "Paragraph B" criteria were in place when the ALJ issued her determination in November 2017, the ALJ applied the correct criteria. To this end, "the regulations themselves contemplate an ALJ using the new

listings when evaluating pre-2017 mental health expert assessments". Lord v. Berryhill, 2019 WL 4018308, at *7 (citing *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-01, at n.1 (Sept. 26, 2016))("If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand."). It is noteworthy that during the hearing, the parties agreed that the ALJ's conclusion would be the same regardless of which criteria were applied by the SAC because after amendment the criteria remained essentially the same.

Notwithstanding the foregoing, the Court's main issue with the ALJ's decision is not that the SAC did not examine Plaintiff or cited to outdated criteria, but that they did not evaluate more than a year of psychiatric notes from Plaintiff's treating physician. And that the ALJ decided to give greater weight to the SAC's opinions and cure the deficiency in the SAC's opinions by interpreting the psychiatric notes herself, as a lay witness. The Court is aware that an ALJ determination is not erred simply because the non-examining source did not review the complete case record. See Bourinot v. Colvin, 95 F. Supp. 3d 161 (D. Mass. 2015). However, in this case, the ALJ based its decision on the opinions of the SAC, who did not evaluate Plaintiff nor Dr. Loyola's progress notes from August 2014 until the last date insured—more than a year of Plaintiff's relevant psychiatric treatment. The Court takes issue with such a course of action.

The Commissioner argues, citing Valentín-Rodríguez v. Commissioner of Social Security, 2014 WL 2740410, at *7 (D.P.R. 2014), that it is within the ALJ's scope of review to evaluate SAC reports along with the entire record to determine if these reports are corroborated and, in doing so, they can constitute substantial evidence to support an RFC determination. Moreover, the Commissioner argues that, even though the SAC did not evaluate the complete file, the ALJ did evaluate Dr. Loyola's progress notes from August 2014 until December 2015. The problem with this argument is that, by evaluating over a year of progress notes rendered by a psychiatrist, the ALJ is incorrectly rendering a medical opinion as a lay witness. In Social Security disability proceedings, an ALJ is not qualified to determine claimant's RFC based on raw medical evidence, "but instead must look to medical expert to do so." Social Security Act, § 205(g), 42 U.S.C.A. § 405(g); 20 C.F.R. § 404.1520. "[M]edical expert opinions are required for the ALJ to determine the extent to which a claimant's medical conditions limit a claimant's ability to perform work-

related activities." <u>Valentín-Rodríguez v. Commissioner of Social Security</u>, 2014 WL 2740410, at *7 (D.P.R. 2014). "To evaluate a claimant's RFC, an ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms." *Id.* Even though an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings", he must not "overstep the bounds of a lay person's competence and render a medical judgment." <u>Gordils v. Secretary of Health & Human Services</u>, 921 F. 2d 327, 329 (1st Cir. 1990). An ALJ "cannot base the RFC determination on his own independent interpretation of raw medical data beyond the ken of a lay person." <u>Burge v. Colvin</u>, 2016 WL 8138980 (D.R.I. 2016, unreported) (<u>citing</u> <u>Morey v. Colvin</u>, 2015 WL 9855873, at *1, 13 (D.R.I. 2015)).

In the case of <u>Rosa-Figueroa v. Commissioner</u>, 2019 WL 5622593 (D.P.R. 2019), this District Court vacated the Commissioner's decision because the ALJ improperly substituted the medical opinion of experts for his lay opinion. In that case, the Commissioner argued that the ALJ could draw a conclusion without the assistance of a medical expert because terms like "cooperative," "euthymic," and "coherent," were easily understood by lay persons. In response to this argument, this District Court reasoned that "lay persons do not readily know what meaning psychiatrists and psychologists attach to these terms, particularly when those experts are evaluating an individual's mental health as it relates to 'cognitive difficulties,' 'thought process,' 'speech,' 'thought content,' 'insight,' or 'reliability.'" <u>Rosa-Figueroa</u>, 2019 WL 5622593 at *6.  Simply put, the ALJ, as a lay person, cannot give meaning to the terms used by medical experts. Citing the Seventh Circuit Court of Appeals, this District Court stated that "[s]evere depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it." <u>Wilder v. Chater</u>, 64 F.3d 335, 337 (7th Cir. 1995); <u>citing</u> <u>Salmond v. Berryhill</u>, 892 F.3d 812, 818 (5th Cir. 2018) (<u>citing</u> <u>Morales v. Apfel</u>, 225 F.3d 310, 319 (3rd Cir. 2000) ("The principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability.")). This Court agrees with the District Court in <u>Rosa-Figueroa</u>. The ALJ's decision on Plaintiff's mental RFC is significantly based on the opinions of SAC who, not only are non-examining physicians, but also rendered opinions based on a remarkably incomplete file. And the ALJ improperly supplemented this gap by providing her own lay person analysis.

The Court finds that the ALJ, departing from the applicable rule which required giving controlling weight to Dr. Loyola as Plaintiff's treating physician, based Plaintiff's mental RFC primarily on SAC who, in turn, based their opinions on a significantly incomplete medical record, missing over a year worth of psychiatric notes from Plaintiff's treating physician. The ALJ's evaluation of these progress notes oversteps the bounds of a lay person, forcing the ALJ to impermissibly render a medical judgment. Having considered the administrative record, the briefs on file, and after hearing the parties during the oral arguments, the Commissioner's decision is reversed and this case is remanded to the Social Security Administration's Office of Disability Adjudication and Review for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is **REVERSED**, and the case is remanded for further administrative action consistent with this opinion. The Commissioner is specifically instructed to re-evaluate the medical source opinion consistent with the applicable regulations, providing more elaborate reasons for the weight given to the opinions of treating and non-examining physicians. In addition, the Commissioner shall supplement the opinions rendered by both examining and non-examining medical sources to account for Plaintiff's medical records from August 2014 until the date last insured. This ruling is not an opinion on the ultimate merits of Plaintiff's claim upon remand.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2021.

*s/Giselle López Soler*
GISELLE LÓPEZ-SOLER
United States Magistrate Judge